UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AFFILIATED MANAGERS GROUP, INC. : | CIVIL ACTION NO. |
| Petitioner, : | |
| v. : | **05CV10641 MLW** |
| FRANK M. NATALE : | |
| Respondent. : | April 1, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF COMPLAINT AND PETITION OF AFFILIATED MANGERS GROUP, INC. TO COMPEL ARBITRATION**

Petitioner, Affiliated Managers Group, Inc. ("AMG"), by its attorneys, Jackson Lewis LLP, submits this memorandum of law in support of its Complaint and Petition for an order to compel arbitration against Respondent, Frank M. Natale ("Natale").

I.  **FACTS**

On January 6, 1999, Natale executed the Amended and Restated Limited Liability Company Agreement (the "LLC Agreement") with AMG (among others), a copy of the LLC Agreement is attached hereto as Exhibit 1. On January 6, 1999, Natale executed the Non-Solicitation/Non-Disclosure Agreement ("Non-Solicitation Agreement") with AMG (among others), a copy of which is attached as Exhibit 2. In exchange for executing the LLC Agreement and the Non-Solicitation Agreement, Natale received valuable consideration, including but not limited to receiving equity interests in Rorer Asset Management, LLC ("Rorer"), an AMG Affiliate.

Pursuant to Section 11 of the Non-Solicitation Agreement and Section 11.6 of the LLC Agreement, Natale specifically agreed that any claim or controversy arising out of or

relating to the agreements and all disputes arising in connection with the LLC Agreement shall be resolved by binding arbitration under the auspices of the American Arbitration Association ("AAA") in Boston, Massachusetts. Pursuant to Section 12 of the Non-Solicitation Agreement, Natale expressly consented to the jurisdiction of the Superior Court of the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts. Natale further agreed to submit to the personal jurisdiction of such courts; consented to service of process by confirmed facsimile, registered or certified mail, or commercial courier (pursuant to Section 8 of the Non-Solicitation Agreement and Section 11.1 of the LLC Agreement); and waived any other requirement with respect to personal jurisdiction or service of process.

On January 14, 2005, AMG initiated an arbitration by filing its Statement of Claim with the AAA against Natale (the "Arbitration"),[1] for his breach of the Non-Solicitation Agreement and the LLC Agreement, by accepting a position with Brandywine Asset Management LLC ("Brandywine"), a direct competitor of Rorer and certain other operations of AMG and its affiliates, and by continuing to work for Brandywine in a role where AMG has evidence that Natale is actively and directly soliciting, on behalf of Brandywine, Past, Present and Potential Clients (as described in the Agreement and defined in the LLC Agreement) of Rorer. A copy of the Statement of Claim is attached hereto as Exhibit 3.

Natale now disputes he is obligated to comply with the terms of the LLC Agreement and the Non-Solicitation Agreement. Despite the previously discussed arbitration provisions of the LLC Agreement and the Non-Solicitation Agreement and contrary to the National Rules for the Resolution of Employment Disputes, on March 1, 2005, Natale filed an "Objection" to AMG's demand for arbitration. A copy of the objection is attached as Exhibit 4.

---

[1] On February 21, 2005, AMG amended its Statement of Claim and demanded monetary relief in the amount of $5,000,000.00.

2

Natale has further refused to participate in the arbitration and has filed a complaint dated March 7, 2005, alleging claims under state and common law in the Court of Common Pleas in the County of Montgomery, Pennsylvania. A copy of the Complaint is attached hereto as Exhibit 5.

On March 11, 2005, the Honorable Thomas M. Del Ricci heard argument on Natale's motion for special injunction, without the benefit of full briefing by the parties and a fair opportunity for AMG to respond, improperly granted Natale's motion and entered a limited order staying the Arbitration. Judge Del Ricci's order provided "the Court finds that the arbitration proceeding that was initiated in the name of AMG or Affiliated Managers Group, Inc. is not within the scope of the agreement because of the name of the entity AMG, who requested the arbitration. And we agree with plaintiff's counsel that to the extent that arbitration is appropriate it must be brought in the name of the parties to the underlying agreement." A copy of that Order is attached hereto as Exhibit 6. The order explicitly did not prohibit AMG from amending its statement of claim stating "I'm not enjoining you from amending your old one. That's up to you. You can do whatever you want." Exhibit 6, pp. 5-6.

On March 15, 2005, as a result of Judge Del Ricci's improper Order, which was based on Judge Del Ricci's erroneous conclusion that AMG was not a proper party to the Non-Solicitation Agreement and disregarded the LLC Agreement and its parallel provisions, AMG filed an Amended Statement of Claim adding Rorer as a party to the Arbitration in an effort to preserve the status quo by proceeding with the arbitration consistent with the Order. A copy of the Amended Statement of Claim is attached as Exhibit 7. In addition, AMG disputes the validity of the Order and has filed a motion to dissolve the improper Order, which is currently pending in the Montgomery County, Pennsylvania Court of Common Pleas. A copy of the motion to dissolve is attached hereto as Exhibit 8.

On March 21, 2005, Natale filed a Petition for Stay seeking an additional order from the Court of Common Pleas for the County of Montgomery, Pennsylvania staying the arbitration proceeding initiated by AMG as amended by the Amended Statement of Claim. A copy of Natale's Petition for Stay is attached as Exhibit 9.

On March 23, 2005, Judge Del Ricci again heard argument on Natale's Petition for Stay and the Motion to Dissolve. Judge Del Ricci reserved decision on both motions and instructed the parties to jointly request a stay of the Arbitration until the pending motions were resolved, since Judge Del Ricci was going on a vacation the following day. Consistent with Judge Del Ricci's instructions, Pennsylvania counsel for AMG and Rorer sent a letter to the AAA, requesting a joint stay of the Arbitration pending the resolution of the Petition to Stay and the Motion to Dissolve. A copy of the letter to the AAA is attached as Exhibit 10.

Notwithstanding Judge Del Ricci's initial instructions, Natale's Pennsylvania counsel sent a letter by facsimile to Judge Del Ricci, objecting to the joint request for stay sent to the AAA, and requesting the Court to enter an order staying the Arbitration. A copy of the letter to Judge Del Ricci is attached as Exhibit 11. Judge Del Ricci then held a conference call with Natale's Pennsylvania counsel, Stephen G. Yusem, AMG and Rorer's Pennsylvania counsel, Daniel P. O'Meara and the AAA case manager (exclusive of AMG's Arbitration counsel, A. Robert Fischer and Kevin R. Brady). Judge Del Ricci then dictated a letter to Attorney O'Meara for him to send to the AAA, that would keep the matter at a standstill until he returned from vacation. A copy of the final letter to the AAA is attached as Exhibit 12.

AMG has been aggrieved by Natale's failure and refusal to participate in the Arbitration as initiated by AMG by the January 14, 2005 Statement of Claim filed with the AAA

4

pursuant to the written arbitration agreements of the parties set forth in the LLC Agreement and the Non-Solicitation Agreement.

## II. ARGUMENT

### A. The Arbitration Agreements Require Arbitration of this Matter, and the Federal Arbitration Act Mandates Enforcement of the Parties' Agreement to Arbitrate Disputes Under the Agreement

The Federal Arbitration Act provides broad Congressional approval of the arbitration of employment disputes and the breadth of its coverage is co-extensive with Congress' power to regulate commerce under the Commerce Clause of the United States Constitution. Southland Corp. v. Keating, 465 U.S. 1, 11-16 (1984). Thus, any agreement must be enforced under Section 2 of the FAA. Section 2 provides, in relevant part:

> A written provision in any contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable save upon grounds as exist at law or equity for the revocation of any contract.

9 U.S.C. § 2.

This Section has been construed by the Supreme Court as "a congressional declaration of a liberal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Additionally, the Supreme Court has recently held that the FAA applies to all employment contracts. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 118-122 (2001). Moreover, this petition to compel arbitration is specifically authorized by Section 4 of the FAA, which provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court, which, save for such agreement, would have jurisdiction

5

under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the matter provided for in such agreement.

9 U.S.C. § 4.

Because federal policy favors arbitration, courts are required to construe arbitration clauses as broadly as possible and resolve any doubts regarding arbitrability in favor of arbitration. S.A. Mineracao Da Trindade-Samitri v. Utah Intern, Inc., 745 F.2d 190, 194 (2d Cir. 1984); Big Y Foods v. Connecticut Properties Tri-Town, 985 F. Supp. 232, 235 (D. Conn. 1998) (citing WorldCrisa v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997)). The Supreme Court has held that the FAA "leaves no place for the exercise of discretion by a district court but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original); see also 9 U.S.C. §§ 3, 4.

Based on the federal policy liberally favoring arbitration, most questions are left to the jurisdiction of an arbitrator. One question, however, exists outside this federal policy, and remains within the purview of the courts: whether or not the parties actually agreed to arbitrate the dispute in the first place. See, e.g., PaineWebber Inc. v. Elahi, 87 F.3d 589, 595-96 (1st Cir. 1996) (citing First Options v. Kaplan, 514 U.S. 938, 942-44 (1995)). In other words, it is the role of the Court to determine whether this case is "arbitrable." See McCarthy v. Azure, 22 F.3d 351, 354 (1st Cir. 1994) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (quoting AT&T Techs., Inc. v. Communications Workers, 475 U.S. 643, 648 (1986)).

When determining whether the parties agreed to arbitrate, federal courts use general state law principles of contract law. See, e.g., Rosenberg v. Merrill Lynch, Pierce, Fenner

6

& Smith, Inc., 170 F.3d 1, 19 (1st Cir. 1999). In doing so, courts look to state common law principles applicable to contracts in general, but not state laws that single out arbitration contracts. See, e.g., Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 684-86 (1996) (holding that FAA preempts a Montana statute that establishes special requirements for the formation of arbitration agreements).

Once the Court finds that the parties have agreed to arbitrate a claim, "it is at this point in the analysis that the federal presumption of arbitrability comes into play." Bangor Hydro-Elec. Co. v. New England Tel. & Tel. Co., 62 F. Supp. 2d 152, 158 (D. Me. 1999). "This presumption dictates that 'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .'" Brennan v. King, 139 F.3d 258, 264 (1st Cir. 1998) (quoting Moses H. Cone, 460 U.S. at 24); see also AT&T, 475 U.S. at 654 ("in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.") (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-85 (1960)); McCarthy, 22 F.3d at 354-55 ("a party seeking to substitute an arbitral forum for a judicial forum must show, at a bare minimum, that the protagonists have agreed to arbitrate some claims.")

Natale's agreements to arbitrate his employment claims contained within the LLC Agreement and the Non-Solicitation Agreement are governed by the FAA and provide, in relevant part:

> **Section 11.6 Dispute Resolution.** All disputes arising in connection with this Agreement shall be resolved by binding arbitration in accordance with the applicable rules of the American Arbitration Association.

LLC Agreement at 56 (Exhibit 1) (emphasis in original). Moreover, the Non-Solicitation Agreement contained an express provision to arbitrate:

> 11. <u>Arbitration of Disputes</u>. Any controversy or claim arising out of or relating to this Agreement or the breach hereof shall, to the fullest extent permitted by law, be settled by arbitration in any forum and form agreed upon by the parties, or in the absence of such an agreement, under the auspices of the American Arbitration Association ("AAA") in Boston, Massachusetts in accordance with the Employment Dispute Resolution Rules of the AAA, including, but no limited to, the rules and procedures applicable to the selection of arbitrators.

Non-Solicitation Agreement at 6 (Exhibit 2). Natale's agreement and obligation to arbitrate the dispute currently pending before the AAA clearly falls within the scope of the arbitration agreement.

Natale evidently intends to claim that AMG lacks standing to arbitrate because it was not a party to the Non-Solicitation Agreement. Complaint at 8 (Exhibit 6). This is clearly not the case since AMG is a party to the LLC Agreement and the Non-Solicitation Agreement and executed both agreements as a direct signatory (Exhibits 1 and 2, signature pages). In addition, the parties (including Natale) explicitly agreed that AMG is an "intended third-party beneficiary" of the provisions of the Non-Solicitation Agreement. (Exhibit 2, p. 6, ¶ 9). Moreover, Natale specifically agreed that "the enforcement of this Agreement and the provisions of Sections 3.8 through 3.11 of the LLC Agreement, to which Natale also is a party, are necessary to ensure the protection and continuity of the business goodwill and the confidential business information of the LLC for the benefit of each of its Members." (Exhibit 2, p. 5, ¶ 7).[2]

---

[2] The Non-Solicitation Agreement specifically incorporates by reference, among others, Sections 3.8 through 3.11 of the LLC Agreement, which was executed by AMG, Rorer and Natale, among other parties. The LLC Agreement is referenced in the Statement of Claim, p. 2, n. 1 and further describes the parties obligations including Section 3.10 Remedies Upon Breach, which specifically authorizes AMG the right to an injunction or other equitable relief (in addition to other legal remedies) to prevent any violation of Natale's obligations thereunder.

8

Indeed, as a direct signatory and as an intended third party beneficiary, AMG has a right to enforce the agreement, as would any party: "Under Pennsylvania law, a third party beneficiaries' rights and limitations in a contract are the same as those of the original contracting parties." General Accident Insurance Company of America v. Parker, 445 Pa. Super. 300, 665 A.2d 502 (1995); Miller v. Allstate Ins. Co., 763 A.2d 401, 404 n.1 (Pa. Super. 2000) see also Scarpitti v. Weborg, 609 A.2d 147, 149 (Pa. 1992) (a party is a third party beneficiary to a contract, and has standing to recover on a contract, if the contracting parties have expressed an intention that the third party be a beneficiary, such intention affirmatively appearing in the contract itself).[3] As previously noted, the Supreme Court has held that the FAA "leaves no place for the exercise of discretion by a district court but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original). In the instant case, Natale signed both agreements (Exhibits 1 and 2), agreeing to arbitrate "all disputes arising in connection with" the LLC Agreement and "any controversy or claim arising out of or relating to" the Non-Solicitation Agreement between him, AMG, and other parties. Accordingly, the arbitration agreement at issue here is enforceable and should be enforced by this Court.

### B. Principles of Federal Jurisdiction/Abstention Require this Court to Maintain Jurisdiction Over This Matter and, If Necessary, Impose a Stay on the State Court Proceedings

1. *Four-factor Colorado River test favors maintaining federal jurisdiction*

In Moses H. Cone, the Supreme Court was faced with a dispute in which a

---

[3] The Non-Solicitation Agreement provides that it shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania which apply to contracts executed and performed solely in the Commonwealth of Pennsylvania. Non-Solicitation Agreement at 7, ¶ 16 (Exhibit 2).

hospital filed suit against a contractor, Mercury Construction Corporation ("Mercury"), and an architect in state court concerning a disputed construction contract. Nineteen days later, Mercury filed a petition in federal district court seeking an order to compel arbitration under Section 4 of the Act. The district court granted the hospital's motion for a stay pending resolution of the state-court proceeding. The Fourth Circuit reversed and instructed the court to order the arbitration.

In affirming that reversal, the Supreme Court emphasized:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. The doctrine of abstention . . . is an extraordinary and narrow exception . . . [T]he pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction.

Moses H. Cone, 460 U.S. at 14-15 (quoting Colorado River Water Conservation District v. United States, 424 U.S. 800, 813 (1976)). Furthermore, the Court stressed that the circumstances permitting outright dismissal "are considerably more limited than circumstances appropriate for abstention." Moses H. Cone, 460 U.S. at 15.

The Court identified some of the factors relevant to deciding whether or not to abstain from a given case due to pending litigation in another court, including inconvenience of the federal forum, desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forum. Moses H. Cone, 460 U.S. at 15. It cautioned that the decision whether to dismiss a federal court action rested on a "careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone, 460 U.S. at 16.

In Cone, there was no argument that the federal forum was any less convenient

than the state forum. Moses H. Cone, 460 U.S. at 19. The Court found no danger of piecemeal litigation, unlike the situation in Colorado River.[4] There is no danger of that here. Indeed, the parties in this case have agreed that the United States District Court, District of Massachusetts is an appropriate forum. (Exhibit 1, p. 57, § 11.10; Exhibit 2, p. 6, ¶ 12). Moreover, should this Court grant this petition, there will be no danger of piecemeal litigation in more than one forum because the parties will litigate their dispute in one Arbitration.

As for the final factor, the order in which the courts obtained jurisdiction, the Court held that this factor supported federal jurisdiction, because Mercury could not have brought suit before suit was filed in state court.

> An indispensable element of Mercury's cause of action under Section 4 for an arbitration order is the Hospital's refusal to arbitrate. That refusal did not occur until less than a day before the Hospital filed its state suit. Hence, Mercury simply had no reasonable opportunity to file its Section 4 petition first.

Moses H. Cone 460 U.S. at 21. Likewise, AMG had "no reasonable opportunity to file its Section 4 petition first." This is particularly true based on Natale's representations to the AAA that he sought a "one week extension for **responding** to the statement of claim" within days of filing his state court complaint on March 7, 2005. See Claimant's Comments to Respondent's "Objection" to Demand for Arbitration, p. 2, attached hereto as Exhibit 4. Moreover, here (unlike the Moses H. Cone case), AMG had not received notice of Natale's claims until being served with his Complaint, since Natale's barren "Objection" to arbitration was wholly

---

[4] The Court emphasized that the presence of another party (the architect) who could not be compelled to arbitrate did not impact this factor. If the hospital were then compelled to litigate in two separate fora, "that misfortune, however, is not the result of any choice between federal and state courts; it occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement. Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." Moses H. Cone, 460 U.S. at 20 (emphasis in original).

unsupported by fact or law and contained no reference to Natale's intent to file his state complaint days later. (Exhibit 4).

In connection with the priority issue here, the Supreme Court emphasized that this factor should not be applied mechanically but "rather in terms of how much progress has been made in the two actions." Moses H. Cone, 460 U.S. at 21. See also Luckie v. Smith Barney, Harris Upham & Co., 766 F. Supp. 1116 (M.D. Fla. 1991) aff'd, 999 F. 3d 509 (11th Cir. 1993) (noting that this factor should not be applied mechanically, but that "the key criterion is the progress that has been made in respective suits"). As in that case, "no substantial proceedings" have occurred here. Despite the fact that AMG initiated its arbitration by statement of claim dated January 14, 2004, both matters remain in the preliminary stages due to Natale's delay by refusing to arbitrate, filing an "objection" to the arbitration proceedings prior to the selection of an arbitrator and filing his state court complaint.

Indeed, several federal courts have compelled the parties to arbitration under similar procedural circumstances as in this case. See Specialty Bakeries, Inc. v. RobHal, Inc., 961 F. Supp. 822 (E.D. Pa. 1997) (granting FAA petition to compel arbitration and enjoining party resisting arbitration from proceeding in New Jersey Superior Court to upset the status quo); PaineWebber, Inc. v. Cohen, 276 F. 3d 197 (6th Cir. 2001) (reversing dismissal of FAA petition to compel arbitration and stay state court action recognizing "the FAA allows PaineWebber's petition and that the federal courts have 'a virtually unflagging obligation . . . to exercise the jurisdiction given to them.'"); Metropolitan Life v. Lockette, 155 F. 3d 1339 (11th Cir. 1998) (finding reversible abuse of discretion in district court's abstention decision on petition to compel arbitration to avoid piecemeal litigation in state court case involving multiple non-diverse defendants); Central Reserve Life Ins. Co. v. Kiefer, 211 F.R.D. 445 (S.D. Ala. 2002)

(granting FAA motion to compel arbitration and to stay related state court proceeding under 28 U.S.C. § 2283); Transouth Financial Corp. v. Bell, 149 F. 3d 1292 (11th Cir. 1998) (reversing district court dismissal of FAA petition to compel arbitration on abstention grounds); American Heritage Life Insurance Co., 147 F. Supp. 2d 511, 517 (N.D. Miss. 2001) ("the principle of judicial economy, the strong judicial policy favoring arbitration . . . and the policies embodied in the FAA warrant a stay of the Clay County action [and the granting of the petition to compel arbitration]").

In Specialty Bakeries, the party resisting arbitration, HalRob, Inc., filed suit in the Superior Court of New Jersey instead of immediately proceeding to arbitration as provided in the franchise agreement. Id. at 825. The New Jersey Superior Court refused to stay the action pending arbitration. Id. at 826. Five days after the New Jersey action was instituted, the franchisor filed a petition to compel arbitration under Section 4 of the FAA in the United States District Court for the Eastern District of Pennsylvania. Id. at 827. The district court granted the franchisor's petition to compel arbitration noting "the parties agreement permitted them to seek preliminary equitable relief under limited circumstances while pursuing arbitration. The Court's Order, however, did not mean that a party had carte blanche to override the arbitration process to which it had contracted." Id. at 827.

Moreover, the Specialty Bakeries court observed "[c]ontracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." Id. at 830. The Court noted "[w]e do not believe that a contracting party, or a state court may act in a any way to undercut that policy, where as here, a federal court order compelling arbitration has been issued." Id. As such, the district court enjoined "HalRob from

proceeding in the New Jersey Superior Court to upset the status quo as it existed on February 7, 1997, pending the decision of the arbitrator . . . . the parties are to move promptly to resolve their dispute through arbitration." Id. Likewise, this Court should enjoin Natale from proceeding in the Court of Common Pleas, County of Montgomery, Pennsylvania and compel the parties to arbitrate their dispute in the Arbitration currently pending before the AAA.

> 2. Federal law governs the rule of decision on the merits and, as such, the issue of arbitrability should be resolved in federal court.

The FAA is not merely a procedural device. Rather, it "create[s] a body of substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone, 460 U.S. at 24. It establishes that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. (emphasis added). See also Central Reserve Life Ins. Co. v. Kiefer, 211 F.R.D. 445, 450 (S.D. Ala 2002) ("Here, federal law provides the rule of decision because the petition has been brought solely under the FAA.").

That being the case, it is appropriate and desirable for that law to be applied by a court with greater experience applying federal law – i.e., by the federal court.

## III. CONCLUSION

In light of the fact that the presumption is to favor federal jurisdiction, and exceptional circumstances are required to surrender that jurisdiction, Moses H. Cone, 460 U.S. at 26-27, and for the other reasons cited above, Petitioner, AMG, respectfully requests that this Court order that Natale is required to submit the dispute between the parties to final and binding arbitration currently pending under the auspices of the American Arbitration Association ("AAA") in Boston, Massachusetts and compel Natale to arbitrate the dispute in accordance with their written agreements to arbitrate; enjoin Natale from taking any further action in the case

pending in the Court of Common Pleas of Montgomery County, Pennsylvania, or any other venue; direct that the state court action be stayed, if necessary; awarding costs, expenses and attorney's fees to Petitioner; and providing such other additional relief as is just and proper.

Respectfully submitted,

PETITIONER,
AFFILIATED MANAGERS GROUP, INC.

Date:

By: /s/ Joan Ackerstein
Joan Ackerstein BBO #348220
Samia M. Kirmani BBO# 634699
JACKSON LEWIS LLP
75 Park Plaza, 4th Floor
Boston, MA 02116
Tel. (617) 367-0025
Fax (617) 367-2155
Email: kirmanis@jacksonlewis.com
Email: ackerstj@jacksonlewis.com
ITS ATTORNEYS


PETITIONER,
AFFILIATED MANAGERS GROUP, INC.

Date:

By: _____
A. Robert Fischer
*Motion For Pro Hac Admission To Be Filed*
JACKSON LEWIS LLP
177 Broad Street, 8th Floor
Stamford, CT 06904-0251
Tel. (203) 961-0404
Fax (203) 324-4704
Email: fischera@jacksonlewis.com
ITS ATTORNEYS

15

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been served on this 1st day of April 2005, to counsel of record:

**By Hand Delivery to:**

M. Carolina Avellaneda, Esq.
Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110

**By Facsimile and Federal Express Priority Overnight Mail to:**

Stephen G. Yusem, Esquire
Thomas D. Rees, Esquire
High, Swartz, Roberts & Seidel LLP
40 East Airy Street
Norristown, PA 19404

Jackson Lewis, LLP