IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AFFILIATED MANAGERS GROUP, INC. | : | CIVIL ACTION NO. 05 CV 10641MLW |
|  | : |  |
| Petitioner, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| FRANK M. NATALE | : |  |
|  | : |  |
| Respondent. | : |  |

## RESPONDENT'S SUR REPLY BRIEF IN OPPOSITION TO PETITIONER'S MOTION FOR EXPEDITED HEARING

Respondent Frank M. Natale ("Natale") respectfully submits this response to Affiliated Managers Group, Inc.'s ("AMG") reply brief. Natale limits his comments to two points.

1.      AMG contends that Edward C. Rorer & Co., Inc. is not a Pennsylvania corporation. AMG is incorrect. According to the Commonwealth of Pennsylvania's Secretary of State, Edward C. Rorer & Co., Inc. is a Pennsylvania corporation in good standing. See Affidavit of Johanna M. Yemm, attached as Exhibit A to Respondent's Memorandum in Support of His Motion to Dismiss. Attached as Exhibit B to Respondent's Memorandum in Support of His Motion to Dismiss is document from the Commonwealth of Pennsylvania Department of State certifying that Rorer is "duly incorporated under the laws of the Commonwealth of Pennsylvania and remains subsisting" as of April 20, 2005.

2.      AMG also alleges that Natale's papers contain misstatements of fact. If anyone has misrepresented facts to this Court, it is AMG. Attached hereto as Exhibit A is a true and accurate copy of a transcript from a hearing held on April 11, 2005 in the matter of Natale v. AMG, Rorer Asset Management, LLC and Edward C. Rorer & Co., Inc., in the Court of

Common Pleas in and for the County of Montgomery, Pennsylvania.  During that hearing, Judge

Del Ricci found that AMG's pleadings <u>filed in this action</u> to be laced with inaccuracies and

misrepresentations.  The following are just some of the Court's comments about AMG's

pleadings filed in this Court:

> "Once again, in my mind, sir, as this whole pleading is, is an attempt to mischaracterize this Court's actions." (Transcript, Page 22)

> "By your own admission, this document is inaccurate and it certainly isn't complete and does not accurately reflect the events that transpired, either by its omissions or by its mischaracterizations or by its outright inaccuracies.  Now, I'm not suggesting any ill motive on your part, but if your going to accuse a Court of not being fair, the Court should have the right to have the Federal Court understand the circumstances." (Transcript, Page 27)

> "So the characterization in paragraph 13 [of the Federal Complaint] that I granted an injunction is just patently false." (Transcript, Page 3)

> "I did not issue an injunction, you knew I did not issue an injunction.  And, in fact, you and your counsel represented to a Court in another jurisdiction that I entered an injunction …" (Transcript, Pages 5-6)

> "I just don't like being mischaracterized and this has happened consistently in this case by you, you collectively, not you, you collectively.  We discussed – and we can go back to it – an inaccuracy that existed in a prior pleading that we discussed, and you admit was inaccurate.  And I would just hope that having learned that lesson you would have been more careful in the future." (Transcript, Page 6)

> "So when you place in your pleading that there was not a fair opportunity for AMG to respond, implying that the Court did not give a fair opportunity to AMG to respond, you never asked for any further opportunity to respond." (Transcript, Page 7)

> "And instead of putting the blame on the Court for not giving you a fair opportunity to be heard, why don't you stand up and take some responsibility and tell the Federal Court that you never asked for greater opportunity." (Transcript, Page 12)

> "And the response to that is to mischaracterize this Court's action and to call into question the integrity of this Court and the fundamental fairness of this Court and of the litigants before this Court." (Transcript, Pages 12-13)

> "Had you said to the Federal Court in your pleading we never requested any extension, we never requested a continuance, we thought it might be futile or we requested a continuance, we thought it might be futile or we requested it and the Court denied it, all

of which are – that last statement would not have been true – but if you would have said I never requested one, I never requested a continuance, I never asked for a right to be heard, I never asked for this matter to be continued for better preparation. Instead of just saying that you were denied a fair opportunity to be heard, you weren't denied a fair opportunity to be heard because you never requested any opportunity to be heard other than the day that you were brought here. How can I deny your request that was never made?" (Transcript, Pages 13-14)

"I am taking about inaccuracy." (Transcript, Page 17)

"Now, this implies that I – and by the way – again, maybe it's what's not said in these pleadings that's problematic more than what is not said – you never mentioned to the Federal Court in this pleading that a settlement had been reached." (Transcript, Page 18)

COURT: Do you think it somehow mischaracterizes what occurred that day by not including that information?
MR. O'MEARA: I did not think it was necessary to include that information.
(Transcript, Page 19)

COURT: It is inaccurate, is it not? Did I ever direct you to send a letter?
MR. O'MEARA: No.
COURT: Is that what the pleading says?
MR. O'MEARA: Yes, it does.
COURT: Ergo …
MR. O'MEARA: Ergo it would be inaccurate and I apologize. It was not an intentional misrepresentation or anything.
(Transcript, Page 20)

"You were entitled to a hearing. And I told you I would give you a hearing. And instead of implying to the Federal Court that due process was yanked from you or not provided to you, it would have been nice, sir, and it would have been more candid if you would have accurately or if you would have insisted that your New England counsel be accurate in their representations to the Court." (Transcript, Page 29)

"You have done a disservice here. You have done a disservice, you and your New England counsel; you to the extent that you provided them with inaccurate information if, in fact, that's what you did or tacitly approved the filing of a document that was inaccurate, and by New England counsel by just filing." (Transcript, Page 30).

Natale respectfully suggests that if anyone has misrepresented anything to this Court it is

AMG.

Respectfully submitted,

FRANK M. NATALE.

By his attorney,

/s/ J. Owen Todd
J. Owen Todd (BBO#499480)
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626

Dated: April 20, 2005

4

IN THE COURT OF COMMON PLEAS IN AND FOR

THE COUNTY OF MONTGOMERY, PENNSYLVANIA

CIVIL DIVISION

—  —  —

| | |
|---|---|
| FRANK M. NATALE | : NO. 05-07579 |
| | : |
| vs. | : |
| | : |
| AFFILIATED MANAGERS | : |
| GROUP, INC., RORER ASSET | : |
| MANAGEMENT, LLC., EDWARD | : |
| C. RORER & CO., INC | : |

—  —  —

DEFENDANTS' MOTION TO DISSOLVE/ORDER

—  —  —

Courtroom 8
Monday, April 11, 2005
Commencing at 9:55 a.m.

—  —  —

Corinne M. Oliveira, RPR
Official Court Reporter
Montgomery County Courthouse
Norristown, Pennsylvania

—  —  —

BEFORE:  THE HONORABLE THOMAS M. DEL RICCI, JUDGE

—  —  —

COUNSEL APPEARED AS FOLLOWS:

THOMAS D. REES, ESQUIRE
for the Plaintiff

DANIEL P. O'MEARA, ESQUIRE
for the Defendants
—  —  —

```
 1       NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al    2
 2                     THE COURT: Mr. O'Meara, I'm
 3   referring to the pleadings that were filed in Federal
 4   Court.  Are you familiar with those pleadings?
 5                     MR. O'MEARA:  Yes, I am familiar with
 6   them, Your Honor.
 7                     THE COURT:  And do you know who
 8   verified them?
 9                     MR. O'MEARA:  I don't know who
10   verified them.  And if they were Federal pleadings,
11   perhaps they need not have been verified, but certainly
12   they're submitted by counsel as an accurate
13   representation to that tribunal.
14                     THE COURT:  Please refer to paragraph
15   13.  It is stated therein that the Court granted the
16   injunction.  Is that true?  And did we not have a
17   specific discussion, you and I and Mr. Yusem that I did
19   not grant the injunction?
19                     MR. O'MEARA:  I'd like to state my
20   understanding of that, Your Honor.
21                     THE COURT:  Well, first of all,
22   answer my question.
23                     MR. O'MEARA:  As I recall in the
24   untranscribed conversation colloquy in your chambers, I
25   do recall that Mr. Yusem said that wasn't an injunction,
```

1      NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al    3
2   it was a stay. And I do believe you said something to
3   the effect of, yes, I think it's a stay. If you want to
4   make it an injunction, I'll make them post a bond of a
5   dollar, et cetera.
6                   THE COURT: Correct. It was made
7   clear to you that I never granted the injunction, but
8   that if an injunction was required a bond would be
9   required. Was that not your understanding?
10                  MR. O'MEARA: I do believe that was
11  what was said, but again --
12                  THE COURT: And is there anything in
13  my Order that says that I granted an injunction?
14                  MR. O'MEARA: I believe you said
15  towards the end of the Order I'm not going to enjoin you
16  from doing that, with respect to the other matter.
17                  THE COURT: Correct. In fact, the
18  only thing that was stated in my record was that I
19  stayed the arbitration; correct?
20                  MR. O'MEARA: Correct.
21                  THE COURT: All right, so the
22  characterization in paragraph 13 that I granted an
23  injunction is just patently false.
24                  MR. O'MEARA: I disagree with that,
25  Your Honor, and I would like to be heard on the issue.

1      NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al    4

2   Did that act --

3                       THE COURT:  Please stand.

4                       MR. O'MEARA:  Thank you.

5                       Did that act as an injunction or a

6   stay.  The only motion or petition pending at the time

7   that Order was issued was the Petition for Special

8   Injunction.  The scheduling order pursuant to which we

9   appeared said that the matter was limited to the special

10  injunction.  I had approximately twenty-four hours to

11  prepare for that matter and frankly forty-eight hours

12  before the Order was issued.  I had never heard the name

13  Frank Natale and had no knowledge of this case.

14  Frankly, I think under Pennsylvania appellate law, that

15  should be treated as an injunction and it should be held

16  to injunctive standards

17                       THE COURT:  That may be your

18  interpretation of Pennsylvania law, but that's not what

19  I did.

20                       MR. O'MEARA:  And, Your Honor --

21                       THE COURT:  And you and I made

22  that -- I made that clear to you, did I not?

23                       MR. O'MEARA:  I believe you did say

24  that.

25                       THE COURT:  So why was it represented

1    NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al    5

2  that I entered an injunction?

3                MR. O'MEARA:  Your Honor, if we would

4  have seen a consequential difference to calling it an

5  injunction versus a stay, I'm sure Boston counsel would

6  have called it a stay.

7                THE COURT:  That's not true.  You did

8  see the distinction, you recognized the distinction and

9  you raised the distinction to me.  You raised the

10  distinction that if it were an injunction, there would

11  have to be a bond posted, and it was for that reason we

12  had the specific discussion that it was not.  You

13  recognized the distinction.

14                MR. O'MEARA:  Correct.  In this

15  court, I recognize the distinction.  I don't see that it

16  makes any difference, with all due respect, Your Honor,

17  in the Boston court whether it was an injunction or a

18  stay.  It was an Order certainly.

19                THE COURT:  Certainly.  My suggestion

20  to you is from a legal perspective it may not make a

21  difference, but from a truth and accuracy statement it

22  makes a difference.  I did not issue an injunction, you

23  knew I did not issue an injunction, I told you I did not

24  issue an injunction.  And, in fact, you and your counsel

25  represented to a Court in another jurisdiction that I

1    NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al    6

2 entered an injunction after that discussion.

3              MR. O'MEARA:  Your Honor, nothing was

4 done by me or by Boston counsel that was a knowing

5 misrepresentation to the Court and I think the choice of

6 the word "injunction" was the equivalent of an Order

7 staying the case.  I don't think it's consequential of

8 the Boston Court.  And in point of fact, I think under

9 Pennsylvania appellate standards, the appellate courts

10 may look to the Order issued as an injunction given the

11 procedural context in which it was.  So frankly --

12              THE COURT:  All right.  Let's go to

13 the next issue.

14              MR. O'MEARA:  -- as I stand here in

15 hindsight, I wish we would have said stay just to avoid

16 any ill will by the Court.

17              THE COURT:  There's no ill will

18 towards you at all.  I just don't like being

19 mischaracterized and this has happened consistently in

20 this case by you, you collectively, not you, you

21 collectively.  We discussed -- and we can go back to it

22 -- an inaccuracy that existed in a prior pleading that

23 we discussed, which you admit was inaccurate.  And I

24 would just hope that having learned that lesson you

25 would have been more careful in the future.

```
 1      NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al    7
 2                      Let's go to the next one.
 3                      MR. O'MEARA:  Sure.
 4                      THE COURT:  Where it was indicated
 5      that you did not have a fair opportunity to respond, I
 6      don't recall any request for a continuance of that.  Was
 7      there?
 8                      MR. O'MEARA:  There was no request
 9      for a continuance.
10                      THE COURT:  Was there any request to
11      postpone the injunction hearing until you had more time
12      to prepare?
13                      MR. O'MEARA:  No, there was not, but
14      frankly, I would have liked more time.  I --
15                      THE COURT:  You could have asked for
16      it and I could have given it to you, couldn't I?
17                      MR. O'MEARA:  That is true.
18                      THE COURT:  And you failed to do so.
19                      MR. O'MEARA:  I failed to do so.
20                      THE COURT:  So when you place in your
21      pleading that there was not a fair opportunity for AMG
22      to respond, implying that the Court did not give a fair
23      opportunity to AMG to respond, you never asked for any
24      further opportunity to respond.
25                      MR. O'MEARA:  Your Honor, I didn't
```

1       NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al     8

2   ask because --

3                     THE COURT:  Did you manage to tell

4   the Federal Court that you didn't ask for anything?

5                     MR. O'MEARA:  No, we didn't.

6                     THE COURT:  Why not?

7                     MR. O'MEARA:  Because I believe we

8   did not have a fair opportunity to respond.

9                     THE COURT:  You never raised that

10  issue and you never asked me for more time.  Was I

11  supposed to read your mind, sir?

12                    MR. O'MEARA:  No, you were not, Your

13  Honor, but if I may be heard, on twenty-four hours'

14  notice, I was called by a special Order of this Court to

15  appear.  I submitted a brief that substantially narrowed

16  the issues because the issues in the petition or

17  complaint were far ranging; I effectively narrowed them.

18                    On the issue which the Court finally

19  decided the matter, the third-party beneficiary issue, I

20  had no idea walking in here that that would be any issue

21  whatsoever.

22                    THE COURT:  When it became an issue,

23  sir, you were sitting here  How long have you practiced

24  law?

25                    MR. O'MEARA:  I've practiced law

1      NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al    9

2   seventeen years.

3                    THE COURT:  Based on those seventeen

4   years, did it ever cross your mind to say, Judge, this

5   is a new issue, we'd like time to come back and address

6   this.  Please don't issue your injunction.  We'd like a

7   fair opportunity to be heard.  Did you ever once say

8   that to me?

9                    MR. O'MEARA:  No, I did not

10  because --

11                   THE COURT:  Did you ever suggest that

12  you did not have a fair opportunity to be heard on that

13  day?

14                   MR. O'MEARA:  On that day, no, I did

15  not, but --

16                   THE COURT:  Did you ever subsequently

17  tell me -- until this document appears in Federal Court

18  -- that you did not get a fair opportunity to be heard?

19                   MR. O'MEARA:  Yes, I did through --

20                   THE COURT:  When?

21                   MR. O'MEARA:  Through the Motion to

22  Dissolve.  I submitted --

23                   THE COURT:  That you agreed to

24  resolve and not have heard.  That Motion to Dissolve;

25  right?

1    NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al  10

2                    MR. O'MEARA:  No, if I can be heard,

3    in the chambers in the court that day -- I'm sorry, in

4    the Judge's chambers, the Judge said he was going to

5    reserve ruling on that and essentially establish

6    language for a letter that I was directed to send to

7    Triple A.

8                    THE COURT:  We'll get to directing in

9    a minute.

10                    MR. O'MEARA:  Okay.

11                    THE COURT:  But let's read paragraph

12    13.  When you read paragraph 13, does it not imply that

13    the Court did not give you a fair opportunity to be

14    heard?

15                    MR. O'MEARA:  Yes.

16                    THE COURT:  Is that not the

17    implication?

18                    MR. O'MEARA:  Very much so.

19                    THE COURT:  Is that the allegation?

20                    MR. O'MEARA:  Yes.

21                    THE COURT:  You're alleging that I

22    did not give you a fair opportunity to be heard?

23                    MR. O'MEARA:  As it relates to that

24    Order, yes.

25                    THE COURT:  And you never raised the

1    NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al   11

2    issue.

3                    MR. O'MEARA:  I never raised the

4    issue.  Your Honor, if I may be heard --

5                    THE COURT:  You know what, you keep

6    saying if I may be heard.  I've not stopped you yet.

7                    MR. O'MEARA:  A motion to stay an

8    arbitration is typically resolved through the ordinary

9    motion process with sufficient time to respond.  I was

10   called in to court on approximately twenty-four hours'

11   notice.  I was scrambling just to be here and understand

12   the issues.

13                   THE COURT:  Am I supposed to

14   understand that?

15                   MR. O'MEARA:  I think so, yes, with

16   all due respect.

17                   THE COURT:  Okay.  Let's stop for a

18   second.  With all due respect to you, why don't you tell

19   me, why don't you just tell me and stand up and say,

20   Judge, look, we just got this, we didn't have a chance

21   to fairly respond, we would like this matter continued,

22   we'd like you to take no action for a week or two weeks

23   until we can get ready.  Why didn't you do that?

24                   MR. O'MEARA:  In hindsight, perhaps I

25   should have.

1    NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al    12

2                    THE COURT:  And instead of putting

3    the blame on the Court for not giving you a fair right

4    to be heard, why don't you stand up and take some

5    responsibility and tell the Federal Court that you never

6    asked for greater opportunity.

7                    MR. O'MEARA:  I never asked, Your

8    Honor, because I thought it would be seen as an evasive

9    tactic, and I'm sorry, Your Honor.

10                    THE COURT:  You're taking no

11    responsibility here, sir.  And that's troublesome to

12    this Court.

13                    Let's move on.  I have more.

14                    MR. O'MEARA:  Sure.  And there's

15    other things I'd like to respond to that were raised by

16    the Court in its initial comments before we went on the

17    record.

18                    THE COURT:  I will raise all of those

19    comments.  I didn't realize we didn't have a Court

20    Reporter.  Once again, I was trying to, as I had done

21    previously, with your consent, save you the

22    embarrassment by having certain conversations off the

23    record, which again we discussed in chambers and you

24    thanked me for it.  You thanked me for doing that.  And

25    the response to that is to mischaracterize this Court's

```
 1      NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al   13
 2   action and to call into question the integrity of this
 3   Court and the fundamental fairness of this Court and of
 4   the litigants before this Court.  This Court acted in
 5   all manner to give you the right to be heard, had
 6   conference after conference, called you in, called you
 7   on the telephone when there was a problem.
 8                   MR. O'MEARA:  Your Honor, at no time
 9   did we intend to impune the integrity of the Court in
10   any way.
11                   THE COURT:  Well, you certainly are
12   impuning the fairness of the Court because you have
13   alleged that it was not fair to you.  I'm not hearing a
14   denial.
15                   MR. O'MEARA:  The pleadings speak for
16   themselves and --
17                   THE COURT:  That's the problem.  They
18   do speak for themselves, but they don't speak the truth
19   or at least not the whole truth.  Had you said to the
20   Federal Court in your pleading we never requested any
21   extension, we never requested a continuance, we thought
22   it might be futile or we requested it and the Court
23   denied it, all of which are -- that last statement would
24   not have been true -- but if you would have said I never
25   requested one, I never requested a continuance, I never
```

1    NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al   14

2  asked for a right to be heard, I never asked for this

3  matter to be continued for better preparation.  Instead

4  of just saying that you were denied a fair opportunity

5  to be heard, you weren't denied a fair opportunity to be

6  heard because you never requested any opportunity to be

7  heard other than the day that you were brought here.

8  How can I deny your request that was never made?

9             MR. O'MEARA:  Your Honor, if we would

10  have realized the importance of that characterization to

11  the Court, we certainly would have added language that

12  we did not request an extension.

13             THE COURT:  It is stated in paragraph

14  14 -- or 17, rather, that Judge Del Ricci instructed the

15  parties to jointly request a stay.  We know that to be

16  inaccurate, don't we?

17             MR. O'MEARA:  With all due respect,

18  no, Your Honor.

19             THE COURT:  All right.  Well, let's

20  start with this.  I can show you right away why it's

21  inaccurate, sir.  As you know from the conversation, the

22  joint conversation that has occurred between the Court,

23  among the Court, you, Mr. Yusem, and the case manager, a

24  joint request is not required.  The only request that

25  they will acknowledge, Triple A, is not a joint request.

```
 1      NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al   15
 2    It is a request by the moving party.  There was no
 3    direction at all, but certainly no direction that a
 4    joint request be filed for a continuance of that
 5    arbitration hearing because, A, it was not necessary,
 6    only your request was necessary; and B, it never
 7    happened.  Now, explain that.
 8                    MR. O'MEARA:  Sure.  Actually that
 9    aspect of the conversation with the case manager I don't
10    recall, but I don't question that it happened.  You'll
11    recall that everyone was on the line.  I was called.  I
12    was taken very much by surprise by the call and the
13    phrase "joint request" comes from my recollection of my
14    notes of the morning conversation in your chambers
15    where, as you were anticipating going away for a while,
16    I thought you wanted the matter to sort of be still for
17    a period and my notes of that conversation say joint
18    request.  I was trying to narrow --
19                    THE COURT:  Okay.  Well, let's go
20    through that.  Did you file a joint request or did you
21    file a single request?  Did Mr. Yusem send anything or
22    sign anything when you initially sent up the request for
23    a continuance?  Who sent it, Mr. O'Meara?
24                    MR. O'MEARA:  It was sent purely by
25    me.
```

NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al  16

1

2                    THE COURT:  Okay, so there wasn't a

3    joint request made.

4                    MR. O'MEARA:  No, I believe a single

5    party, if they confirm with the other side, can make a

6    joint request.

7                    THE COURT:  That's not the issue,

8    sir.  You said I directed you to make a joint request.

9                    MR. O'MEARA:  Yes.

10                   THE COURT:  Okay.  The fact is, A, a

11   joint request is not required; and B, you didn't do a

12   joint request, you did a single request yourself on

13   behalf of your client, so there was never a joint

14   request anticipated because your own actions belie that.

15   Otherwise, you would have had Mr. Yusem's consent or

16   signature.

17                   MR. O'MEARA:  First --

18                   THE COURT:  And we know that Mr.

19   Yusem didn't consent to the letter because he objected

20   to the letter.

21                   MR. O'MEARA:  And frankly, I had no

22   idea that the language "joint request" or "claimant's

23   request" would have a consequence in --

24                   THE COURT:  It's not a matter of a

25   consequence, sir, we keep getting back to a consequence.

1    NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al   17

2  I am talking about inaccuracy.

3                    MR. O'MEARA:  And I'll defend myself,

4  Your Honor.  My recollection of the morning conference

5  and my notes had it that you directed me to make a joint

6  request so I sent a letter characterizing a joint

7  request.

8                    THE COURT:  So why didn't you do it?

9  Why didn't you send a joint request?  If that's what I

10  told you to do and that was your understanding of what

11  was to be done, why didn't you do it?

12                    MR. O'MEARA:  That's what I thought I

13  did.  I sent a letter jointly requesting on behalf of me

14  and the defendant that the matter be stayed.

15                    THE COURT:  Jointly requesting by you

16  and the defendants that the matter be stayed.

17                    MR. O'MEARA:  Correct.

18                    THE COURT:  Okay.

19                    MR. O'MEARA:  And in that regard, I

20  had made efforts, I believe the Court's instructions to

21  me were to read it over the phone to Mr. Natale's

22  counsel before it was sent.  I thought I would do better

23  than that, I sent it by e-mail.  I called to follow-up.

24                    THE COURT:  No one is disputing that.

25  The fact is this is a very narrow issue that I'm talking

1    NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al   18
2  about now.  Once again, you said that I directed you to
3  file a joint request.  I didn't direct you to do
4  anything, sir, okay, and I certainly didn't require a
5  joint request.  So let's get to the directing part.
6                    You had a pleading pending in front
7  of me at the time which I had scheduled and I was ready
8  to do that day as a matter of fact, if you recall, three
9  o'clock in the afternoon I think I had said or two
10  o'clock in the afternoon.  It was agreed, I didn't
11  direct anything, that if such a continuance were
12  granted, that hearing would not be necessary.  If the
13  arbitration was continued, that hearing would not be
14  necessary.  I offered you a hearing that day.  I didn't
15  direct you to do anything.  You had the option of having
16  a hearing or you had the option of resolving the matter
17  as I thought we had it resolved.
18                    Now, this implies that I -- and by
19  the way -- again, maybe it's what's not said in these
20  pleadings that's problematic more than what is not
21  said -- you never mentioned to the Federal Court in this
22  pleading that a settlement had been reached.  And it was
23  for that reason that the Court suggested that such a
24  letter be sent so that the whole matter could be
25  resolved and that in lieu thereof you had the option of

```
 1        NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al   19
 2  having a hearing that afternoon.
 3                    MR. O'MEARA:  Your Honor --
 4                    THE COURT:  I'm sorry, I went through
 5  this document.  Is that anywhere in here?
 6                    MR. O'MEARA:  No, it is not.
 7                    THE COURT:  Do you think it somehow
 8  mischaracterizes what occurred that day by not including
 9  that information?
10                    MR. O'MEARA:  I did not think it was
11  necessary to include that information.
12                    THE COURT:  We got that part.  I
13  figured that.
14                    MR. O'MEARA:  Your Honor --
15                    THE COURT:  But it implies here that
16  I ordered you to do something.  I didn't.  I suggested
17  to you that you could have a hearing in lieu thereof,
18  but if you wanted to resolve it, which you said you
19  wanted to do, that we discussed how the methodology
20  would be implemented to do that.  And I said to you at
21  that point in time the methodology would be to send a
22  letter.
23                    Was that a direction to send a
24  letter?
25                    MR. O'MEARA:  Your Honor, your
```

1      NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al   20

2   recollection is the same as mine.  It is -- and to say

3   that you directed us to send the letter rather than

4   suggest it as a means of resolving the pending issues to

5   send the letter, I apologize if that was inaccurate,

6   but --

7                    THE COURT:  You apologize if it's

8   inaccurate.  It is inaccurate, is it not?  Did I ever

9   direct you to send a letter?

10                   MR. O'MEARA:  No.

11                   THE COURT:  Is that what this

12  pleading says?

13                   MR. O'MEARA:  Yes, it does.

14                   THE COURT:  Ergo . . .

15                   MR. O'MEARA:  Ergo it would be

16  inaccurate, and I apologize.  It was not an intentional

17  misrepresentation of anything.

18                   THE COURT:  In paragraph 19 of the

19  same pleading, it is implied that I had -- that this

20  conference was exclusive of -- and in fact, it's stated,

21  it's not implied -- it's stated that arbitration counsel

22  was not party to the conference, to the telephone

23  conference.

24                   MR. O'MEARA:  Correct.

25                   THE COURT:  That is, in fact, a fact,

1      NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al    21

2    they were not.  It implies, however, through that that

3    there was something wrong with doing that.  I'm assuming

4    that that's relevant for some reason.  It was placed in

5    here for some relevant reason.  The fact is,

6    Mr. O'Meara, that those counsel had not entered their

7    appearance in this case formally, had they?

8                    MR. O'MEARA:  Jeffrey Vona of that

9    office had entered his --

10                   THE COURT:  Is there a written entry

11   of appearance on record?

12                   MR. O'MEARA:  Yes.

13                   THE COURT:  Okay.  How about the

14   other one?

15                   MR. O'MEARA:  No, neither Mr. Fisher

16   nor Ms. Brady have entered an appearance.

17                   THE COURT:  Now, did you at any point

18   in time indicate to me that you needed to have other

19   people or that I should have everybody in there or is it

20   improper for the Court to discuss it with lead counsel?

21                   MR. O'MEARA:  No, it is not improper

22   and, no, I did not request that they be included.

23                   THE COURT:  I didn't note in your

24   pleading on paragraph 19 that no request was made by

25   counsel to have other counsel present on the call.  Was

1          NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al   22

2   that deliberately left out or did you just think that

3   was not relevant?

4                    MR. O'MEARA:  I thought it was not

5   relevant and --

6                    THE COURT:  Well, if it's not

7   relevant that these people -- that you didn't ask me to

8   have these other people on the phone call, why is it

9   relevant that they weren't on the phone call?

10                   MR. O'MEARA:  I don't know that it is

11  relevant.  It is in their --

12                   THE COURT:  But you felt it important

13  to include that.

14                   MR. O'MEARA:  Yes.

15                   THE COURT:  Once again, in my mind,

16  sir, as this whole pleading is, is an attempt to

17  mischaracterize this Court's actions.

18                   MR. O'MEARA:  Your Honor, in no way

19  was that intended to mischaracterize the Court's

20  actions.  I don't see it as being a consequential

21  clause.

22                   THE COURT:  Sir, it goes to this

23  whole theme that the Judge acted improperly; that the

24  Judge acted without proper authority; that the Judge

25  acted hastily and without due process.  That's the whole

1    NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al  23

2    implication of this pleading.  And by saying that I

3    didn't give counsel a chance to be heard indirectly by

4    saying I didn't include them in a phone call, you're

5    implying, you're supporting or buttressing this

6    allegation that somehow the Court acted improperly.

7                    It then said that the letter was

8    dictated, dictated.  I didn't know, first of all, sir,

9    that you took dictation.  Do you take dictation?

10                   MR. O'MEARA:  I did that day, yes.

11                   THE COURT:  You take dictation.

12                   MR. O'MEARA:  Yes, I remember the

13   phone call.

14                   THE COURT:  Oh, so do I, sir.

15                   MR. O'MEARA:  It concluded with the

16   Court saying, Mr. O'Meara, send a letter to Triple A.

17   You read off language, I took it down, and then I sent

18   the letter.

19                   THE COURT:  I didn't read off

20   language, sir.  I didn't have anything to read language

21   from.  How do you know I read off language?

22                   MR. O'MEARA:  You stated language.  I

23   didn't mean to imply you were reading it from something

24   else.

25                   THE COURT:  Did I not suggest to you,

1     NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al   24

2   sir, that my understanding of the language that was

3   agreed upon was X, isn't that what I said, and that if

4   such a letter were sent, it would resolve the situation?

5   Isn't that what I said?

6               MR. O'MEARA:  No.  Actually I

7   remember you saying:  Mr. O'Meara, send a letter to

8   Triple A that says this.  That's my honest recollection.

9   I have a duty of candor to tribunal, even if it offends

10  the Court.

11              THE COURT:  So far it's not gone

12  well.

13              MR. O'MEARA:  Your Honor, my

14  recollection is that you read off language, you said

15  send a letter to Triple A saying that.

16              THE COURT:  Well, certainly I

17  couldn't have read off language and you wouldn't know

18  that I read off language because, sir, you weren't

19  there.  Reading off language implies that I'm reading

20  from something.

21              MR. O'MEARA:  Okay.  Your Honor, I

22  didn't mean to --

23              THE COURT:  And you weren't there,

24  sir.

25              MR. O'MEARA:  No, I wasn't there.

```
1       NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al  25
2  And I don't, as I stand here now, mean to imply that you
3  were reading from something.
4                      THE COURT:  Well, what does read off
5  language mean?
6                      MR. O'MEARA:  Stated language.
7                      THE COURT:  I stated language.  Well,
8  that's different than reading off language, would you
9  not agree?
10                     MR. O'MEARA:  I don't see it as being
11 different, no.  You stated language for me to put in the
12 letter for Triple A and I did so.
13                     THE COURT:  Now, at that point in
14 time, and again, throughout this entire pleading, the
15 alternative was for you to have a hearing, was it not?
16                     MR. O'MEARA:  Yes.
17                     THE COURT:  Not mentioned, is it?
18                     MR. O'MEARA:  No.
19                     THE COURT:  Not relevant, is it, in
20 your mind?  Did the Court not offer you the right of due
21 process?
22                     MR. O'MEARA:  The Court expressly
23 stated that if either side was not happy with the way it
24 was resolving things that you would be glad to convene
25 at 3:30 in open court and read your rulings into the
```

1    NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al   26
2  record.
3                    THE COURT:  Not read my rulings, to
4  conduct a hearing, not read rulings.  I had to have a
5  hearing before I could enter a ruling, did I not?
6                    MR. O'MEARA:  Presumably, yes.
7                    THE COURT:  And didn't I offer you
8  that opportunity?
9                    MR. O'MEARA:  I don't recall the
10  exact language.
11                    THE COURT:  I'm not asking you to
12  recall the exact language, Mr. O'Meara.  Did I not offer
13  you the opportunity of a hearing?
14                    MR. O'MEARA:  I recall that you
15  offered that we would meet at 3:30 and I can see
16  you're --
17                    THE COURT:  Did I not offer you a
18  hearing, Mr. O'Meara?
19                    MR. O'MEARA:  I don't recall that,
20  no, Your Honor.
21                    THE COURT:  You don't recall me ever
22  allowing you the opportunity to have a hearing?
23                    MR. O'MEARA:  I'm not saying that you
24  didn't, I just don't recall.  And I can see you're
25  getting very upset at me and I'm sorry.

1    NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al  27

2              THE COURT:  I'm not upset, sir.  I'd

3    just wish you'd be fair.  I'd just wish you'd be fair,

4    sir.  I wish you would give this Court the fundamental

5    fairness that you say this Court has not given you and

6    your client.

7              MR. O'MEARA:  At all times, I would

8    seem to be fair to the Court, Your Honor.

9              THE COURT:  Well, you haven't been,

10   sir.  By your own admission, this document is inaccurate

11   and it certainly isn't complete and does not accurately

12   reflect the events that transpired, either by its

13   omissions or by its mischaracterizations or by its

14   outright inaccuracies.  Now, I'm not suggesting any ill

15   motive on your part, but if you're going to accuse a

16   Court of not being fair, the Court should have the right

17   to have the Federal Court understand the circumstances.

18   You agreed to resolve this case, Mr. O'Meara.  You

19   agreed to the resolution of the case by the methodology

20   of continuing the arbitration.  You expressly agreed to

21   that.  And it was for that reason, Mr. O'Meara, that you

22   sent the letter.  And when the first letter was

23   problematic to Mr. Yusem, you sent the second letter.

24   And it was anticipated that by doing so, Mr. Yusem would

25   agree to abandon any local litigation.  As a matter of

1      NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al   28

2  fact, your words, Mr. O'Meara, were that you could not

3  understand -- these are not your exact words, I'm

4  characterizing your words so I don't want to be accused

5  of stating anything inaccurate. You agreed, sir, that

6  you had no understanding of why your client would not

7  just bring the arbitration in the name of Rorer. You

8  said to us that you thought that that's what would occur

9  and you agreed that that's the resolution that should

10  occur. And it was on that basis that we agreed to stay

11  the matter, not to take any proceeding so that could be

12  effectuated.

13                    MR. O'MEARA: Your Honor, may I offer

14  thoughts on that. I do recall that in the conference in

15  your chambers you said, Mr. O'Meara, why don't your

16  clients just bring the arbitration in the name of Rorer,

17  leave AMG out as a party, and I think you said if you do

18  that, I've got no business enjoining anything. And

19  Mr. Yusem said yes. And I would drop this Pennsylvania

20  proceeding and the case could go to court. And I think

21  I may have said, and it made sense to me, but I also

22  said I need to talk to my client. A point of fact, I

23  recall the Court said, yes, you'll need to talk to your

24  client and maybe they won't be --

25                    THE COURT: I agree with you. That's

1    NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al   29
2    a totally accurate statement and you agree that you had
3    no understanding of why they would do this.
4                        MR. O'MEARA:  Exactly.  And I even
5    recall vividly that I turned to Mr. Yusem and I said,
6    I'm not a counsel in the arbitration, I don't understand
7    all the issues, why is this important.  And he made a
8    statement somewhat on the vague side that it related to
9    the merits.  Upon further investigation after I left the
10   court, it turns out that whether AMG is a party is a
11   significant issue in the arbitration.
12                        THE COURT:  And that may be, sir, and
13   that may be, but certainly at that point in time and
14   since that time, that issue was available to me and you
15   were entitled to a hearing.  You were entitled to a
16   hearing.  And I told you I would give you a hearing.
17   And instead of implying to the Federal Court that due
18   process was yanked from you or not provided to you, it
19   would have been nice, sir, and it would have been more
20   candid if you would have accurately or if you would have
21   insisted that your New England counsel be accurate in
22   their representations to the Court.
23                        And quite frankly, sir, we work very
24   hard to give everyone the opportunity to be heard.  We
25   work very hard to make sure that the fairness of the

1      NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al  30

2    Court is above and beyond reproach because the only

3    authority that we have is a moral authority that if

4    people believe that they have been treated fundamentally

5    fairly that they will abide by Court Orders.  You have

6    done a disservice here.  You have done a disservice, you

7    and your New England counsel; you to the extent that you

8    provided them with inaccurate information if, in fact,

9    that's what you did or tacitly approved the filing of a

10   document that's inaccurate, and New England counsel by

11   just filing.

12             Before the Court at this time -- you

13   may be seated -- Mr. O'Meara, just so that you know, I

14   was trying to treat you with the utmost courtesy

15   throughout this entire process by handling some things

16   on an informal basis when I felt that it could be

17   embarrassing to you and to your law firm.  I even

18   attempted to reach out Thursday and Friday of last week

19   to arrange for a conference and I know you were not

20   available, but I only had until today because today is

21   the 30th day from the issuance of the Order, so I had

22   but no alternative but to do this today in this setting.

23   And I apologize for rushing you in here, although,

24   again, you haven't objected to fundamental fairness

25   today in being rushed in here, but I did try last week

1      NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al   31

2  on both Thursday and Friday to set something up, and I

3  understand you were not available, I don't expect you to

4  be available whenever the Court calls, but you

5  understand that the reason I had to get you in here

6  today at this point in time is today is my thirtieth day

7  from the issuance of the previous Order, actually

8  yesterday was, technically today.

9               I do not under any set of

10  circumstances wish for this Court or any Court to have

11  the spectre of a denial of fundamental fairness over its

12  head.  And whether it's done by -- however it arises,

13  it's just not good.  It's not good.  It would be quite

14  easy for me to justify the Order that was issued on the

15  11th.  Quite frankly, there is a real question of

16  whether or not it's appealable.  If it was indeed an

17  injunction, a temporary injunction as you alleged it

18  was, there's a real question whether or not it's

19  appealable, but nonetheless, I don't need to deal with

20  that.

21               I have before me a Motion to Vacate

22  which is in a sense, not in a sense, titles are not

23  important as you know, captions are not important, it's

24  a Motion to Reconsider.  I will grant it.  The Motion to

25  Reconsider by way of Motion to Vacate is granted,

1      NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al   32

2   thereby making the appeal moot and precluding the

3   investiture of jurisdiction to the appellate court.  The

4   Court will grant the request for a hearing.  And,

5   Mr. O'Meara, we want to be fair, so why don't you tell

6   me how long it's going to take you to prepare.

7                    MR. O'MEARA:  The hearing on --

8                    THE COURT:  On the original petition.

9   I vacated my Order.  The original petition is still

10  standing.

11                   MR. O'MEARA:  I think one week would

12  be sufficient, Your Honor.

13                   THE COURT:  I don't want you to

14  think, Mr. O'Meara, because I don't want to -- God

15  forbid I don't give you enough time and you're going to

16  need witnesses.

17                   MR. O'MEARA:  Ten days would be

18  sufficient, Your Honor.

19                   THE COURT:  Mr. Rees, I know you've

20  been quiet, you haven't had to say much today.  Do you

21  understand the Court's ruling?

22                   MR. REES:  Yes, Your Honor, I do.

23                   THE COURT:  Anybody object to the

24  Court's ruling?

25                   MR. REES:  I would like, Your Honor,

```
1        NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al  33

2   and I don't object to the Court's ruling, but I would

3   like to have an understanding that the arbitration

4   proceeding in Boston will not proceed during this

5   ten-day period or whatever period it happens.

6                    THE COURT:  Well, I don't know when I

7   can schedule it.  I won't schedule it before ten days.

8   It may be that I not hear it at all.

9                    MR. REES:  And there are reasons for

10  my request, number one, we don't want --

11                   THE COURT:  Well, is the arbitration

12  scheduled?

13                   MR. REES:  No, the arbitration is not

14  scheduled to the best of my knowledge.

15                   THE COURT:  Well, Mr. Rees, from a

16  practical standpoint, nobody is going to be able to

17  schedule anything that quickly.

18                   MR. REES:  And I have a witness here

19  today, I could go forward with my part of the hearing

20  today, I understand Mr. O'Meara needs more time because

21  of his being away, but what I would like is just -- and

22  it may not involve the Court, perhaps it should not

23  involve the Court, but I would like some understanding

24  that the status quo is going to be --

25                   THE COURT:  Here's my only problem,
```

1    NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al   34
2  Mr. Rees, every time I reach out to try to resolve this
3  matter, I end up putting my hand in the moving lawnmower
4  blade.  I think it's best at this point in time so that
5  I am not mischaracterized, misquoted or in any other way
6  have the actions of this Court questioned or called into
7  question, I think I will reserve anything that I do at
8  this point in time to formal pleadings.
9              Don't write to me.  Don't call me.
10  And make sure everything that you ask me for has a
11  verification attached.  I think that's the only thing
12  that I can do is to distance myself at this point in
13  time.
14              Mr. O'Meara.
15              MR. O'MEARA:  Several additional
16  points, and as the fact of a filing in District Court of
17  Massachusetts as opposed to the contents of the
18  pleadings, I want to be clear that that's a legitimate
19  procedural move contemplated by the Federal Arbitration
20  Act.  Frankly, if it were up to me, I would prefer to
21  keep working with this Court, but it wasn't up to me.
22              THE COURT:  Understood.
23              MR. O'MEARA:  As to the filing of the
24  appeal last Wednesday, I would like to continue to work
25  with the Court, but I knew I was going to be out

```
1        NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al   35
2   Thursday and Friday, I knew the period expired on the
3   weekend and I've got a duty under 1.1 of competent
4   representation of my client and I was duty bound, I
5   believe, to get that appeal of record.
6                    THE COURT:  Understood.  And no
7   objection to those points, those are perfectly
8   legitimate actions that you've taken.
9                    MR. O'MEARA:  And as to the issues as
10  the characterizations of the pleadings in the Boston
11  papers, I want to apologize to the Court for any bad
12  feelings.  All I can say is that counsel, as they were
13  prepared and I did, after the minor error, I thought in
14  the statement of claim, I said let me see them before
15  they go out, so in a sense I will take responsibility
16  for them.
17                    THE COURT:  Thank you, sir, that's
18  the first time I've heard those words today.
19                    MR. O'MEARA:  All I'll say in my
20  defense is that on issues such as did the Judge enjoin
21  or did they stay, I didn't see it as being a
22  consequential issue and it just didn't catch my eye that
23  it would be this important to the Court and I want to
24  apologize.
25                    THE COURT:  Apology is accepted.
```

1    NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al  36

2                    MR. O'MEARA:  With respect to the

3   proceedings moving forward, if I understand the Court's

4   Order, the initial March 10, I believe it was, Order

5   staying the arbitration has been lifted -- or has been

6   reconsidered and I guess is vacated with the petition to

7   -- Plaintiff's petition itself to be reargued or subject

8   to a new hearing and a date in the future.  Is that

9   correct?

10                   THE COURT:  I think my Order says

11   what it says.

12                   Mr. O'Meara, I'm treading carefully.

13   You cannot blame me at this point in time for treading

14   carefully.

15                   MR. O'MEARA:  No, I can't.  And

16   frankly, in defense of myself, the first day we were

17   here in this very courtroom, you read a ruling.  I asked

18   for clarification of things I thought were implied.  In

19   hindsight, I'm very glad I did because a number of those

20   issues came up later.  And even with the benefit of the

21   transcript of that Order, there are disagreements

22   between counsel as well as --

23                   THE COURT:  And that's available.

24   You have access to the Court when that occurs and no one

25   asked for that access.

1    NATALE vs. AFFILIATED MANAGERS GROUP, INC., et al  37

2                    MR. O'MEARA:  Just to resolve future

3    disagreements, I was just seeking clarification, Your

4    Honor.

5                    THE COURT:  I have granted your

6    motion, but I've considered it in the form of a Motion

7    to Reconsider.  I have granted the Motion to Reconsider.

8    As I understand the appellate rules, that means that

9    this Court still has jurisdiction over the case.  It

10   means that there is no Order pending presently.  And it

11   also means that there needs to be a hearing on

12   Mr. Yusem's original file.  That's how I understand

13   procedure.

14                   MR. REES:  That is correct, Your

15   Honor.

16                   MR. O'MEARA:  Agreed.

17                   THE COURT:  All right.  Have a great

18   day.

19                   MR. O'MEARA:  Thank you, Your Honor.

20                   MR. REES:  Thank you, Your Honor.

21                   (At 10:17 a.m., proceedings were

22   concluded.)

23                         -   -   -

24

25

1                                                    38

2                C E R T I F I C A T E

3

4              I hereby certify that the proceedings

5    and evidence are contained fully and accurately in the

6    notes taken by me in the above cause and that this is a

7    correct transcript of the same.

8

9    _____
     Corinne M. Oliveira, RPR
10   Official Court Reporter

11

12                -   -   -

13

14             Received, and directed to be filed

15   this ___15___ day of _____, 2005.

16

17

18   _____
     Honorable Thomas M. Del Ricci, Judge
19

20                -   -   -

21

22

23

24

25