IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AFFILIATED MANAGERS GROUP, INC. : | CIVIL ACTION NO. 05 CV 10641MLW |
| Petitioner, : | |
| v. : | |
| FRANK M. NATALE : | |
| Respondent. : | |

RESPONDENT'S MEMORANDUM OF LAW
IN OPPOSITION TO PETITION TO COMPEL ARBITRATION

I. PROCEDURAL FACTS

Frank M. Natale ("Natale"), a resident of Montgomery County, Pennsylvania, has worked for a number of years as an investment management business executive.

Affiliated Managers Group, Inc. ("AMG"), a publicly traded Delaware corporation with a principal place of business in Massachusetts, owns sixty-five percent (65%) of the stock of Rorer Asset Management, LLC ("RAM"), a Delaware limited liability company with its principal place of business in Montgomery County, Pennsylvania, engaged in the investment management business.

From 1996 until November 30, 2004, RAM employed Natale in various capacities, most recently as Senior Vice President and Director of Sales and Marketing. On January 6, 1999, Natale received an equity interest in RAM pursuant to an agreement entitled "Rorer Asset Management, LLC Amended and Restated Limited Liability Company Agreement," ("LLC Agreement") attached to the Petition to Compel Arbitration as Exhibit 1. In June 2003, Natale's

equity interest increased to 1% when he was promoted to Senior Vice President and Director of Sales and Marketing.

On January 6, 1999, Natale also signed a Non-Solicitation/Non-Disclosure Agreement ("Non-Solicitation Agreement"), attached to the Petition as Exhibit 2. Section 3 of the Non-Solicitation Agreement contains a non-compete clause applicable for two (2) years after the termination of Natale's employment with RAM.

AMG is not a party to either the LLC Agreement or the Non-Solicitation Agreement as is evident from the first party recitals of those agreements. Moreover, AMG has never employed Natale. Accordingly, AMG is not entitled to arbitrate the Non-Solicitation Agreement against Natale.

On January 3, 2005, Natale became employed by Brandywine Asset Management, LLC ("Brandywine"). On January 12, 2005, AMG filed a Statement of Claim in Boston against Natale before the American Arbitration Association ("AAA") (Case No. 11 16600141 05) to enforce only the Non-Solicitation Agreement. The Statement of Claim is attached to the Petition as Exhibit 3. On March 7, 2005, Natale filed a Complaint in the Montgomery County, Pennsylvania, Court of Common Pleas seeking to, *inter alia*, enjoin AMG from pursuing the AAA arbitration proceeding.

On March 11, 2005, the matter was argued before the Honorable Thomas M. Del Ricci as a result of which the Court stayed the arbitration proceeding. A copy of Judge Del Ricci's Court Order is attached to the Petition as Exhibit 6. The basis for the Court Order is that AMG is not a party to the subject arbitration agreement. (Court Order, p. 3: 2-10)

2

On March 15, 2005, in violation of Judge Del Ricci's March 11 Order, AMG filed an Amended Statement of Claim in the arbitration proceeding retaining AMG as a party and adding RAM as a party. A copy of the Amended Statement of Claim is attached to the Petition as Exhibit 7. Rorer, a party to the Non-Solicitation Agreement is not a party to the arbitration.

On March 21, 2005, Natale filed a Petition to Stay and a supporting memorandum of law attacking the Amended Statement of Claim. A copy of the Petition to Stay is attached to AMG's Petition as Exhibit 9. On March 22, 2005, AMG filed a Motion to Dissolve, a copy of which is attached to AMG's Petition as Exhibit 8.

On March 23, 2005, Judge Del Ricci heard argument on Natale's Petition to Stay and AMG's Motion to Dissolve. At that time, Judge Del Ricci requested AMG's counsel to send a letter to the AAA requesting that AAA stay the arbitration proceeding. On March 23, 2005, AMG's counsel voluntarily sent a letter (mistakenly dated March 17, 2005) to AAA. A copy of the letter is attached to the Petition as Exhibit 10. Noting that the letter from counsel for AMG to AAA did not accurately reflect Judge Del Ricci's instructions, Natale's counsel protested to Judge Del Ricci by letter dated March 23, 2005, after which Judge Del Ricci requested AMG's counsel to send another letter to AAA which AMG's counsel voluntarily did on March 30, 2005. Copies of the March 23, 2005 and March 30, 2005 letters are attached to the Petition as Exhibits 11 and 12, respectively.

On April 1, 2005, notwithstanding the fact that AMG never employed Natale and was not a party to the Non-Solicitation Agreement or the LLC Agreement, AMG filed the above-captioned action to compel Natale to arbitrate the Non-Solicitation Agreement and the LLC Agreement. On April 6, 2005, AMG filed a Notice of Appeal to the Pennsylvania Superior Court from Judge Del Ricci's March 11, 2005 Order.

On April 7, 2005, Judge Del Ricci issued an order scheduling a hearing and argument on Defendant's Motion to Dissolve for April 11. At the April 11 proceeding, Judge Del Ricci treated the Motion to Dissolve as an application for reconsideration of the March 11, 2005 order. Granting the application for reconsideration had the effect of retaining jurisdiction over the matter rather than losing jurisdiction to the Pennsylvania Superior Court. Pa. R.A.P. 1701(b)(3). Judge Del Ricci indicated that he would schedule a hearing on the application for reconsideration to determine whether or not he would reaffirm his March 11 order or issue a different order.

II.   ARGUMENT[1]

A. *Colorado River* Principles of Abstention Require this Court to Abstain From Exercising Jurisdiction Over This Matter.

A federal district court may dismiss a duplicative federal case in favor of a pending state action based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Morgan Stanley Dean Witter Reynolds, Inc. v. Gekas*, 309 F.Supp. 2d 652, 656 (M.D. Pa. 2004), citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed. 2d 483 (1976). In defining *Colorado River* principles of abstention, the Court identified four determinative factors:

1. whether the state court has assumed jurisdiction over any property;
2. the relative convenience of the federal forum and the state forum;
3. the desirability of avoiding piecemeal litigation; and
4. the order in which state and federal forums obtained jurisdiction and the relative progress of the state and federal cases.

---

[1]   Concurrently with the filing of this Opposition, Natale has filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(7) For Failure To Name Indispensable Parties. The Court need not address the merits of AMG's Petition to Compel Arbitration if the Rule 12(b)(7) motion is granted.

4

*Colorado River*, 424 U.S. at 818-820; *Gekas*, 309 F.Supp. 2d at 656. *Colorado River* stressed that a decision to dismiss must be based on a careful balancing of these factors and noted that a district court may give different weight to each factor in its determination. *Colorado River*, 424 U.S. at 818-19.

The first *Colorado River* factor is of no consequence as the case at bar does not involve property.

Respecting the second factor, AMG argues that the parties have agreed that the District of Massachusetts is the appropriate forum. AMG Memorandum, p. 11. Yet, AMG is not a party to either the Non-Solicitation Agreement or the LLC Agreement. Therefore, Natale has not agreed to anything with AMG. Moreover, the provision that the District of Massachusetts is an appropriate forum is not to the exclusion of other forums. Montgomery County, Pennsylvania, offers the more appropriate forum for the case. RAM and Rorer & Co. have their principal places of business in Montgomery County. Natale is a resident of Montgomery County. Most of the witnesses and documents are located in or near Montgomery County. The District of Massachusetts is relatively inconvenient to all parties and witnesses except AMG. See *Colorado River*, 424 U.S. at 820 (a distance of 300 miles between the state and the federal court weighs in favor of abstention).

To avoid piecemeal litigation, Natale brought the Montgomery County proceedings against AMG, RAM and Rorer & Co. alleging (1) tortious interference with existing contractual relationships; (2) tortious interference with prospective contractual relationships; (3) invasion of privacy; (4) violation of Pennsylvania's Wage Payment and Collection Law and (5) breach of fiduciary duty. These claims are not arbitrable under the Non-Solicitation Agreement. Requiring Natale and AMG to arbitrate in Massachusetts would effectively require piecemeal

5

litigation in Massachusetts and Pennsylvania. Thus, the third *Colorado River* factor supports abstention.

The fourth factor to be considered is the order in which the state and federal forums obtained jurisdiction and the relative progress in each forum. The order in which the forums obtained jurisdiction clearly favors abstention, as the Montgomery County action commenced on March 7, 2005 and the federal action did not commence until April 1, 2005. On March 7, 2005, Natale commenced the Montgomery County action by filing a complaint to which the three defendants filed an Answer without objection to jurisdiction or venue. On March 11, 2005, AMG, RAM and Rorer & Co. filed a Memorandum of Law and argued before the Honorable Thomas M. Del Ricci, without objecting to jurisdiction or venue, after which Judge Del Ricci entered an Order staying the Arbitration Proceeding, a copy of which is attached to the Petition as Exhibit 6.

On March 22, 2005, AMG, RAM and Rorer & Co. filed a Motion to Dissolve with a Memorandum of Law and an Answer to Natale's March 21, 2005 Petition to Stay. On March 23, 2005, AMG, RAM and Rorer & Co. again argued before Judge Del Ricci without any objection to jurisdiction or venue. Finally, on April 6, 2005, the defendants filed a Notice of Appeal to the Superior Court from Judge Del Ricci's March 11, 2005 Order.

The federal action consists of little more than a Complaint and Petition to Compel Arbitration. See *Colorado River*, 424 U.S. at 820 (limited federal proceedings consisting of only a complaint and motion to dismiss favors abstention).

The Montgomery County proceeding was commenced and twice argued almost a month prior to the federal proceeding. AMG, RAM and Rorer & Co. continue to participate in the

6

Montgomery County proceeding, including filing an appeal from Judge Del Ricci's Order only days after filing the present action. This factor likewise obliges this Court to abstain.

B.     AMG Is Not Entitled to Compel Natale to Arbitrate under the Federal Arbitration Act

As a threshold matter, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986); see also *Acher v. Fujitsu Network Communs., Inc.*, 354 F. Supp. 2d 26, 36 (D. Mass. 2004) ("Before compelling a party to arbitrate, the court must first determine whether there exists a valid agreement to arbitrate and whether the claims asserted fall within the scope of the arbitration agreement.")

The role of the court under the Federal Arbitration Act, 9 U.S.C. §4, is to determine whether the parties agreed to arbitrate a given dispute. This determination consists of two considerations: whether there is a valid agreement to arbitrate between the parties, and if so, whether the dispute falls within the scope of the arbitration agreement. *Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 214 (5th Cir. 2003); see also *Bellevue Drug Co. v. Advance PCS*, 333 F.Supp.2d 318, 323 (E.D.Pa. 2004) (court must determine whether a valid agreement to arbitrate exists between the parties).

In making this determination, courts look to the relevant state law of contracts. *Will-Drill*, 352 F.3d at 214; *Bellevue*, 333 F.Supp.2d at 323. In the present case, the Non-Solicitation Agreement is governed by Pennsylvania contract law, and the LLC Agreement is governed by Delaware contract law.

7

### 1. LLC Agreement Disputes are Not Ripe for Consideration by this Court under the Federal Arbitration Act.

The AAA Statement of Claim and Amended Statement of Claim seek to arbitrate nothing more than Natale's alleged violation of the Non-Solicitation Agreement. Neither the Statement of Claim nor its Amendment seeks any relief regarding the LLC Agreement. The Statement of Claim does not even refer to the LLC Agreement except to indicate that its definition section is incorporated into the Non-Solicitation Agreement.

Therefore, as AMG has brought no claim under the LLC Agreement, AMG is not entitled to compel arbitration regarding the LLC Agreement. See e.g., *Paine Webber, Inc. v. Faragalli*, 61 F.3d 1063 (3d Cir. 1995) (an action to compel arbitration under FAA accrues only when respondent refuses to arbitrate).

### 2. AMG is not a Party or Third Party Beneficiary to the LLC Agreement.

AMG seeks to enforce an agreement to which it is not a party against an individual whom it never employed. The parties to the LLC Agreement do not include AMG. The first recital provides:

> This Amended and Restated Limited Liability Company Agreement (the "Agreement") of <u>Rorer Asset Management, LLC</u> [RAM] (the "LLC" or the "Company") is made and entered into as of January 6, 1999 (the "Effective Date"), by and among the Persons identified as the <u>Manager Member</u> and the <u>Non-Manager Members on Schedule A</u> attached hereto as members of the LLC, and the Persons who become members of the LLC in accordance with the provisions hereof. (emphasis added)

The Manager Member listed on LLC Agreement Schedule A is Rorer & Co. The Non-Manager Members are more than twenty individuals including Natale. AMG is not the Manager Member or a Non-Manager Member and thus not a party to the LLC Agreement.

AMG signed an "Acknowledgement" to the LLC Agreement which provides that AMG executed the LLC Agreement solely to acknowledge and agree to be bound by Section 3.11,

8

Article VII, and the relevant provisions of Article XI. The Acknowledgement does not refer to any Agreement that AMG alleges Natale has violated.

Moreover, AMG is not referred to in section 3.9 which provides in relevant part, that "each Non-Manager Member and each Employee Stockholder agrees, for the benefit of the LLC [RAM] and the other Members…" to enter into the non-solicitation agreement. As AMG is not referred to in the non-solicitation provision and is not a party to the LLC Agreement, AMG is not entitled to compel arbitration pursuant to Section 4 of the FAA.

3.  Under Pennsylvania Law, AMG is Not Entitled to Compel Arbitration under the Non-Solicitation Agreement either as a Party or as a Third-Party Beneficiary.

AMG seeks to enforce a Non-Solicitation Agreement to which AMG is not a named party, against an individual who was never employed by AMG. The first recital of the Non-Solicitation Agreement provides:

> This Non-Solicitation/Non-Disclosure Agreement (this "Agreement") is entered into as of January 6, 1999, by and among <u>Rorer Asset Management, LLC, [RAM]</u> a Delaware limited liability company (the "LLC"), <u>Edward C. Rorer & Co., Inc.</u>, a Pennsylvania corporation (the "Company"), and <u>Frank M. Natale</u> (the "Employee Stockholder"). (emphasis added)

This recital pointedly does not include AMG. AMG has signed the Non-Solicitation Agreement, but since AMG is not a named party, its signature is both gratuitous and unavailing. AMG also asserts that it has the right to compel arbitration as a third-party beneficiary to the Non-Solicitation Agreement. There are several fundamental problems with AMG's argument. First, the assertion that AMG is a third party beneficiary is totally at odds with AMG's argument that it is a party to the Non-Solicitation Agreement. It is axiomatic that an entity cannot be both a party and a third-party beneficiary to the same contract. *Orff v. United States of America*, 358 F.3d 1137, 1147 (9th Cir. 2004), *cert. granted*, 125 S.Ct. 309, 160 L.Ed. 2d 221 (2004).

9

Second, AMG's theory fails because this case deals with the enforcement of a post-employment restrictive covenant, and under Pennsylvania law such a restrictive covenant must be incident to employment in order to be enforceable. *Hess v. Gebhard & Co.*, 570 Pa. 148, 808 A.2d 912, 920 (2002). Pennsylvania courts permit the enforcement of post-employment restraints "only where they are ancillary to an employment relationship between the parties, the restrictions are reasonably necessary to protect the employer, and the restrictions are reasonably limited in duration and geographic extent." *Insulation Corp. of America v. Brobston*, 446 Pa. Super. 520, 529, 667 A.2d 729, 733 (1995). In a recent case refusing to allow a third party to enforce a post-employment restriction, the Pennsylvania Supreme Court held that Pennsylvania law "permits equitable enforcement of employee covenants not to compete only so far as is reasonably necessary for protection of the *employer*." *Hess v. Gebhard & Co., supra*, 570 Pa. at 162, 808 A.2d at 920 (emphasis added). Since AMG never employed Natale, AMG has no standing to enforce the Non-Solicitation Agreement.

Third, AMG's attempt to assign to itself the ability to enforce the Non-Solicitation Agreement must fail because Natale has never consented to such an assignment. "[A]n assignment of a right will not be effective if it purports to make a material change in the duties or responsibilities of the obligor, unless the obligor assents to such changes." *Hess v. Gebhard & Co., supra*, 570 Pa. at 166, 808 A.2d at 922. Any attempt by AMG to enforce the Non-Solicitation Agreement will create a material changes in Natale's obligations by allowing a much larger entity than RAM to prevent Natale from engaging in a broader range of activities. *Hess v. Gebhard & Co., supra.* This is precisely why the Pennsylvania Supreme Court refused to uphold the assignment and enforcement of the restrictive covenant in *Hess v. Gebhard & Co.*

10

Fourth, courts generally do not extend the right to compel arbitration to a non-party unless the agreement itself so provides. *Matter of Waldron (Goddess)*, 61 N.Y. 2d 181, 461 N.E. 2d 173, 473 N.Y.S. 2d 136 (1984). A non-party, such as a third-party beneficiary, may fall within the scope of an arbitration agreement. *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266 (Pa. Super. 2004). However, the parties to the contract must clearly intend to provide the third party beneficiary with the right to compel arbitration. Id.; see also *Bangor Gas Company v. Rosdor Construction Corporation*, 56 Pa.D.&C.2d 317, 319-320 (Northampton Co. 1972) (third party indemnitor not entitled to use an arbitration clause in a contract entered into by indemnifiee and another party); *Rath v. Managed Health Network, Inc.*, 844 P.2d 12, 13 (Id. 1992) (arbitration agreement did not apply to third-party beneficiary because the arbitration clause stated that it applied only to the parties to the agreement); *City of Peru v. Illinois Power Company*, 630 N.E. 2d 454, 457-58 (Ill. App. 1994) (under the Uniform Arbitration Act, only the parties to the arbitration agreement, and not a third-party beneficiary, are entitled to arbitration). Even when refusing to stay arbitration, Pennsylvania courts look to the language of the arbitration clause. See e.g., Smay, 864 A.2d 1266 (2004).

Additionally, whether or not AMG is a party or a third party to the Non-Solicitation Agreement, the clear intent of the arbitration clause in Section 11 of the Non-Solicitation Agreement was to protect AMG from being a party to the arbitration. The arbitration clause refers by name to RAM, Rorer & Co., and Natale. It pointedly does not refer to AMG. The first sentence of the arbitration clause provides that:

> [a]ny controversy or claim arising out of or relating to this Agreement or the breach hereof shall, to the fullest extent permitted by law, be settled by arbitration in any forum and form agreed upon <u>by the parties</u>....(emphasis added)

The second sentence of the arbitration clause provides that:

> [i]n the event that any person or entity other than the
> Employee/Stockholder [Natale], the LLC [RAM] or the Company
> [Rorer & Co.] may be a party with regard to any such controversy
> or claim, such controversy or claim shall be submitted to
> arbitration subject to such other person or entity's agreement.

This sentence envisions that the only individuals who may compel arbitration pursuant to the arbitration clause are the parties to the Non-Solicitation Agreement, viz., Natale, RAM and Rorer & Co. There is no intent to give AMG the right to compel arbitration, or to have any right to arbitrate unless it chooses to agree to be named by other parties in an arbitration. Under the principle of *expressio unius est exclusio alterius*, this specific language obviates an interpretation of the arbitration clause to allow AMG to commence an arbitration either as a party or as a third-party beneficiary to the Non-Solicitation Agreement.

Courts employ the doctrine of *contra proferentem* to construe contract ambiguities agreements against the drafter. See, e.g., *Mastrobuono v. Shearson, Lehman, Hutton, Inc.*, 514 U.S. 52, 62-63, 115 S.Ct. 1212 (1995). This tenet applies to questions of whether a party has entered into an arbitration agreement. See *Paul Revere Variable Annuity Insurance Company v. Kirschhofer*, 226 F.3d 15 (1st Cir. 2000). The doctrine of *contra proferentem* is appropriate where the issue is one of substantive arbitrability. See *SBC Interactive, Inc. v. Corporate Media Partners*, 714 A.2d 758, 761 (Del. 1998).

### 4. AMG is Not Entitled to Compel Arbitration as RAM's Agent

AMG further argues that it is entitled to compel arbitration against Natale because AMG was acting as an agent of RAM when it signed the Non-Solicitation Agreement. AMG asserts it was an agent of RAM, because of its ownership interest in Rorer & Co. which is the managing member of RAM. AMG's argument is without merit.

Under agency theory, a non-signatory may enforce an arbitration agreement contained in a contract that the agent signed on behalf of its principal. See *Usina Costa Pinto S.A. Acucar E*

12

*Alcool v. Louis Dreyfus Sugar Company Inc.*, 933 F.Supp. 1170, 1178 (S.D. N.Y. 1996) <u>citing</u> *Fisser v. International Bank*, 282 F.2d 231, 234-35 (2d Cir. 1960). However, signing an arbitration agreement as an agent for a disclosed principal is not sufficient to render the agent a party to the arbitration clause, and as a consequence the agent cannot compel arbitration. *McCarthy v. Azure*, 22 F.3d 351, 361 (1st Cir. 1994); <u>see also</u> Restatement (Second) of Agency §320. This exception has been consistently applied in the arbitration context. *Arhontisa Maritime Ltd. v. Twinbrook Corp.*, 2001 WL 1142136, *4 (S.D.N.Y.) <u>citing</u>, <u>e.g.</u>, *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 445 (3d Cir. 1999).

In the present case, even if AMG was acting as an agent for RAM in executing the Non-Solicitation Agreement, AMG is not entitled to compel arbitration as an agent. Indeed, AMG was an agent of a disclosed principal, RAM, when it signed the Non-Solicitation Agreement. Therefore AMG is not entitled to compel arbitration as an agent of RAM.

### C. The Anti-Injunction Act Operates to Bar Enjoining the Montgomery County Proceedings

The Anti-Injunction Act provides that "a court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. §2283. This Court is thus prohibited from staying the pending Pennsylvania court proceedings. No act of Congress authorizes a stay of state court proceedings in these circumstances. In addition, this Court has entered no judgment in this matter. Further, the stay of the Montgomery County proceeding is not necessary in aid of this Court's jurisdiction. Therefore, assuming that this Court does not abstain, 28 U.S.C. §2283 prevents this Court from enjoining the Montgomery County proceeding.

III.   CONCLUSION

For the foregoing reasons, Respondent Frank M. Natale respectfully requests your Honorable Court to dismiss AMG's Complaint and Petition to Compel Arbitration under Federal Arbitration Act.

>Respectfully submitted,
>
>FRANK M. NATALE.
>
>By his attorney,
>
>/s/ J. Owen Todd
>J. Owen Todd (BBO#499480)
>Todd & Weld LLP
>28 State Street, 31st Floor
>Boston, MA  02109
>(617) 720-2626

Dated: April 20, 2005